IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY E. PRICE | : | CIVIL ACTION |
| | : | |
| v. | : | No. 15-131 |
| | : | |
| UPPER DARBY SCHOOL DISTRICT | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                            **October 14 , 2016**

      Plaintiff Mary E. Price brings this pro se action under the Individuals with Disabilities Education Act (IDEA) on behalf of T.R., her twelve-year-old son.[1] Price challenges Hearing Officer Anne Carroll, Esq.'s denial of her claim that Defendant Upper Darby School District denied T.R. a free appropriate public education (FAPE), alleging the Hearing Officer made four errors during the due process hearing that denied Ms. Price a fair and impartial adjudication. The parties have filed cross-motions for summary judgment. Because the Hearing Officer made no procedural errors, and Ms. Price received a fair due process hearing, the Court will grant the District's motion for summary judgment and deny Ms. Price's motion for summary judgment.

**FACTS**[2]

      On February 7, 2011, during T.R.'s second-grade school year at Bywood Elementary

---

[1] Price originally brought this action on behalf of both T.R. and J.H., her fifteen-year-old nephew; however, the Court previously dismissed on statute of limitations grounds the claims pertaining to J.H.

[2] When reviewing cross-motions for summary judgment, the "court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Schlegel v. Life Ins. Co. of N. Am.*, 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (3d ed. 1998)); *see also Appoloni v. United States*, 450 F.3d 185, 189 (6th Cir. 2006) (noting a court must evaluate each cross-motion for summary judgment "on its own merits and view all facts and inferences in the light most favorable to the nonmoving party" (internal quotation marks and citation excluded)). The facts presented herein are undisputed.

School, Ms. Price requested the District evaluate T.R. to determine his eligibility for special services, as she believed T.R. was exhibiting signs of inattention, hyperactivity, and impulsivity. In response, the District directed T.R.'s second-grade teacher, Nicole Lewis, to complete a Student Support Team (SST) referral form and gather information regarding T.R.'s academic and behavioral performance in school. In March 2011, Ms. Lewis presented the information she compiled to the SST, and the following month, Dr. Julie James, the District's psychologist, on behalf of the STT, reported to Ms. Price that the team did not recommend an evaluation because T.R. was not demonstrating signs of eligibility for special education services. Dr. James explained the team, in making its decision, considered Ms. Lewis's SST referral form, consultation with Ms. Price, close monitoring of T.R.'s educational and behavioral progress and intervention adjusted based upon need, and history of solid academic performance. The school provided Ms. Price with a Notice of Recommended Educational Placement (NOREP) and procedural safeguards advising her of the right to challenge the District's decision not to evaluate T.R. Dr. James also acknowledged Ms. Price was having T.R. evaluated for ADHD, and instructed Price to share any results with the school so that the team could create a 504 Behavioral Support Plan (504 Plan) in the event T.R. was diagnosed as having ADHD.

A month later, in April 2011, Ms. Price provided the District with an ADHD diagnosis for T.R, and the District developed a 504 Plan. In May 2011, Ms. Price approved the 504 Plan, which provided T.R. with accommodations and strategies to increase his attention, focus, and organization throughout the remainder of his second-grade and third-grade school years. Ms. Price expressed no concerns with the Plan or T.R.'s behaviors during his third-grade school year (2011-2012).

During the fall of T.R.'s fourth-grade year, T.R. exhibited difficulty in several areas of

executive functioning, and Ms. Price again requested an evaluation in October 2012. The District granted Ms. Price's request, and conducted an extensive evaluation of T.R., incorporating Ms. Price's own observations of T.R.'s behaviors, teacher observations, academic and functioning assessments, and an occupational therapy evaluation. Dr. James concluded T.R. was IDEA-eligible, and the District thereafter prepared an Individualized Education Program (IEP) for T.R., which was executed on January 17, 2013. Price signed the NOREP form, approving T.R.'s IEP. Due to ongoing concerns, T.R.'s IEP was revised approximately eight times between January and June 2013.

On April 11, 2013, Ms. Price submitted to the District a written request for an Independent Educational Evaluation (IEE), which was denied. After Ms. Price submitted a second request in June 2013, the District approved the IEE. In September 2013, before the IEE was conducted, however, Ms. Price withdrew T.R. from Bywood and enrolled him at Commonwealth Connections Academy (CCA), a cyber charter school, for the fifth grade during the 2013-2014 school year. The following summer, in August 2014, T.R. underwent the IEE, conducted by Dr. Paul Yellin at the Yellin Center.

On October 14, 2014, Ms. Price filed a due process complaint alleging the District deprived T.R. of a FAPE beginning in his second-grade year. A week later, Dr. Yellin submitted a report, which contained a diagnosis of Expressive Language Disorder. After receiving the report, Ms. Price amended her due process complaint on November 12, 2014.

A hearing on Ms. Price's due process complaint was held over four non-consecutive days: January 7, 2015; January 28, 2015; February 2, 2015; and February 11, 2015. On January 7, 2015, Ms. Price sought to introduce evidence of IDEA violations in 2011, during T.R.'s second-grade year. The Hearing Officer allowed Dr. James to testify regarding T.R.'s

second-and third-grade years, but explained to Ms. Price that IDEA's two-year statute of limitations limited her claims to the two years prior to her filing of the due process complaint. The Hearing Officer allowed Ms. Price to submit an offer of proof to show an exception to the statute of limitations applied, and at the January 28, 2015, hearing, Ms. Price testified that her case should be exempt from the two-year statute of limitations because, in 2011, the District intentionally misled her and withheld information regarding T.R.'s need for special education.

At the February 2, 2015, hearing, the Hearing Officer concluded the scope of Ms. Price's due process hearing would be limited to the two years prior to the date Ms. Price filed her due process complaint because she had failed to show any exception to the statute of limitations applied. Thus, the Hearing Officer permitted Ms. Price to introduce evidence only from T.R.'s fourth-grade year, and precluded Ms. Price from introducing evidence from T.R.'s second-and third-grade years, including testimony from Ms. Lewis. On March 23, 2015, the Hearing Officer rendered her decision, finding the District had not deprived T.R. of a FAPE at any time between October 2012 and September 2013, when he withdrew from Bywood. The next day, Price timely appealed that decision.

**DISCUSSION**

Summary judgment shall be granted if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing

the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party must "show that the [opposing party] has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). To defeat summary judgment, "the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* (alteration in original) (citation and internal quotation marks omitted); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (holding a party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts"; he must "come forward with specific facts showing that there is a *genuine issue for trial*" (citations and internal quotation marks omitted)).

"The purpose of the IDEA is to 'ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . .'" *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 271–72 (3d Cir. 2014) (quoting 20 U.S.C. § 1400(d)(1)(A)). The IDEA requires states which accept federal funding to make a FAPE available to children with disabilities by developing an IEP. *Id.* (citing 20 U.S.C. §§ 1412(a)(1), 1414(d)). States are required to comply with procedures for developing IEPs and to implement procedural safeguards to ensure children with disabilities and their parents are provided with due process. *Id.* Pursuant to the IDEA's administrative process, a parent who believes her child is not receiving a federally mandated FAPE may file a complaint and participate in an impartial due process hearing with respect to her child's FAPE. *Id.* (citing 20 U.S.C. § 1415(b)(6)(A), 1415(f)(1)(A)); *see also D.E. v. Cent. Dauphin Sch.*

*Dist.*, 765 F.3d 260, 274 (3d Cir. 2014) (noting "[i]f a parent is displeased with the school's actions with respect to the FAPE provision, the IDEA provides for certain procedural safeguards," including "a due process hearing before an administrative official" (citing 20 U.S.C. § 1415(b))). A "party aggrieved by the findings and decision made [in a due process proceeding] . . . shall have the right to bring a civil action with respect to the complaint." 20 U.S.C. § 1415(i)(2)(A).

A district court reviews an IDEA decision by a state administrative agency under a modified de novo standard, affording "due weight" to the factual findings from the administrative proceedings by considering those findings to be "prima facie correct." *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006); *see Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 524 (3d Cir. 1995) ("The district court may reach an independent decision, except that it must accord the decision of the state agency 'due weight' in its consideration."). "[I]f a reviewing court fails to adhere to [factual findings from the administrative proceedings], it is obliged to explain why . . . [and] point to contrary nontestimonial extrinsic evidence on the record." *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003) (internal quotation marks and citations omitted). In contrast, a the district court owes no deference to conclusions of law drawn by a state or local educational agency. *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 82 (2d Cir. 2005); *cf. Carlisle Area Sch.*, 62 F.3d at 528 n.3 ("Obviously, conclusions of law receive plenary review.").

**Count I**

Ms. Price first argues the Hearing Officer erred in her determination that the IDEA's statute of limitations barred her claims of IDEA violations more than two years prior to the date Ms. Price filed her due process complaint, and that no exceptions to the statute of limitations applied. Third Am. Compl. at 19. She argues summary judgment is warranted as to this claim

because she did not discover the District had denied T.R. of a FAPE until October 20, 2014, and in any event, her case falls under an exception to the statute of limitations because the District purposefully withheld evidence of T.R.'s language-based disability as early as his second-grade year. The District argues Ms. Price's claim fails as a matter of law because the Hearing Officer's decision was correct. The Court finds the Hearing Officer erred by limiting Ms. Price's claims to two years before her filing of her complaint. Nevertheless, even considering her claims stemming from 2011, the Court finds the District did not deny T.R. of a FAPE, and the Hearing Officer's statute of limitations decision was harmless.

Under the IDEA, a request for an impartial due process hearing must be made "within two years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the due process complaint." 20 U.S.C § 1415(f)(3)(C); 34 C.F.R. § 300.511(e). The regulations further provide a due process complaint "must allege a violation that occurred not more than two years before the date the parent or public agency knew or should have known of the alleged action which forms the basis of the complaint." 20 U.S.C § 1415(b)(6)(B); 34 C.F.R. § 300.507(a)(2). However, an exception exists where a parent is prevented from filing a complaint due to specific misrepresentations or withholding of information by the school. 34 C.F.R. § 300.511(f); 20 USC 1415(f)(3)(D).

Ms. Price filed her due process complaint on October 14, 2014, but seeks relief for IDEA violations as early as T.R.'s second-grade year (2010-2011), specifically pertaining to the denial of her original evaluation request in 2011. At the January 28, 2015, hearing, the Hearing Officer determined the statute of limitations restricted Ms. Price's claims to violations occurring in the two years prior to her filing the of a due process complaint, i.e., violations occurring between October 2012 and 2014. *See* ODR Admin. Record Ex. 2, 3/23/15 Special Ed. Hr'g Officer Decision at 15

n.2; *id.* Ex. 12, HO-1A; Hr'g Tr. 498-99, Jan. 28, 2015; Hr'g Tr. 540-51, Feb. 2, 2015. However, the Hearing Officer permitted Ms. Price to submit an offer of proof to demonstrate an exception to the statute of limitation applied, and Ms. Price testified as to why she believed the District misrepresented and withheld information in 2011. *See* Hr'g Tr. 498-533, Jan. 28, 2015; ODR Admin. Record, Ex. 12, HO-1A, HO-3. Ms. Price also submitted records she received from the school in 2013, including T.R.'s test scores, which she alleged were inconsistent with the SST's report and showed the SST purposefully excluded information while making its decision. *Id.* at 505-06, 518, 523-28; *see* PE-1A; HO-3 at 1 (citing PE-1, 1A, 18, & 19, SD-1-9 as exhibits representing documentary evidence for her offer of proof). Ms. Price also requested permission to call Ms. Lewis as a witness in order to clarify (1) "the discrepancy in RtI Intervention"; (2) "the Progress Monitoring Improvement Report for MAZE Comprehension;" (3) GMADE assessment administration and scoring"; (4) "[SST] Referral Form completion"; (5) "the 504 Accommodations for writing"; and (6) "Theme Test Performance Summary data reflected on report cards, interim reports and profile sheets." HO-3 at 1, 3; *see also* Hr'g Tr. 504, Jan. 28, 2015. During the February 2, 2015, hearing, the Hearing Officer stated Ms. Price had failed to demonstrate that an exception to the statute of limitations applied, limiting Ms. Price's claims to the 2012-2013 school year, when T.R. was in the fourth grade. *See* ODR Admin. Record Ex. 2, 3/23/15 Special Ed. Hr'g Officer Decision at 15 n.2; Hr'g Tr. 539-53, Feb. 2, 2015.

Ms. Price argues that, contrary to the Hearing Officer's decision, all of her claims are timely under the IDEA's discovery rule because she reasonably did not discover the IDEA violations until October 20, 2014, upon receiving Dr. Yellin's evaluation results diagnosing T.R. with expressive language disorder. She contends Dr. Yellin's diagnosis demonstrated the District and Dr. James misrepresented T.R.'s performance issues in 2011 as ADHD manifestations rather

8

than manifestations of a language disorder.  In response, the District argues Ms. Price should not be able to evade the statute of limitations by fabricating a later discovery date when in fact she had every opportunity to challenge the District's denial of her request for an evaluation in 2011, but chose not to because she was satisfied with the 504 Plan and T.R.'s subsequent academic performance until his fourth-grade year.  The District further argues Ms. Price cannot rely on Dr. Yellin's diagnosis as a basis for applying the discovery rule because Dr. James and the Hearing Officer disagreed with the diagnosis and the diagnosis was not obtained until several years after Ms. Price's original evaluation request.

Ms. Price testified she did not challenge the denial of her evaluation request in 2011 because at the time she trusted Bywood staff and had no reason to question the District's decisions.  Hr'g Tr. 508, Jan. 28, 2015.  She relied on Dr. James's representations that T.R. was solidly in the average range.  *Id.* at 508-09, 511.  In 2012, when she again requested an evaluation and the District agreed to implement an IEP, and later in 2013, as the District continued to amend the IEP, Ms. Price chose not to file a complaint because the District was working to fix the IEP and address T.R.'s problems.  *Id.* at 514-15.  Ms. Price testified, "I think it would be unreasonable to immediately jump to filing a due process [complaint] when you are in the middle of having an IEP implemented."  *Id.* at 515.

The date of Ms. Price's discovery of T.R.'s injury need not be decided.  The Court finds that accepting Ms. Price's assertion that her date of discovery of T.R.'s injury was October 20, 2014, and in light of *G.L. v. Ligonier Valley School District Authority*, 802 F.3d 601 (3d Cir. 2015), the Hearing Officer's statute of limitations ruling was in error.  Nevertheless, that ruling was harmless.

In *G.L.*, the Third Circuit clarified the application of the IDEA's statute of limitations

provisions, 20 USC §§ 1415(f)(3)(C) and 1415(b)(6)(B). The parents in *G.L.* reasonably discovered the deprivation of a FAPE to their son on March 9, 2010, and filed their due process complaint on January 9, 2012, within the two-year statute of limitations as set forth in U.S.C. § 1415(f)(3)(C). *Id.* at 606. The parents requested compensatory education for September 2008 through March 2010—the entire period their son was allegedly denied a FAPE before he was withdrawn from the school. *Id.* However, the hearing officer limited their remedies to injuries that occurred during the two-year window before the filing of the due process complaint. *Id.* at 607.

The Third Circuit disagreed, concluding § 1415(b)(6)(B), like § 1415(f)(3)(C), imposes a two-year filing deadline for a due process complaint after the reasonable discovery date of an injury, and neither provision limits remedies for injuries that occurred only within the two years before the discovery date. *G.L.*, 802 F.3d at 604-05, 625. In other words, under the IDEA, the limitations period for filing a complaint "functions in a traditional way, that is, as a filing deadline that runs from the date of reasonable discovery and not as a cap on a child's remedy for timely-filed claims that happen to date back more than two years before the complaint is filed." *Id.* at 616. The Court explained "once a violation is reasonably discovered by the parent, any claim for that violation, however far back it dates, must be filed within two years of the "knew or should have known" date. *Id.* at 620. This interpretation, the Court explained, is consistent with the IDEA's broad remedial purpose of providing every child with a FAPE, and the longstanding principle that "a child is entitled to compensatory education for a period equal to the period of deprivation, but excluding the time reasonably required for the school district to rectify the problem." *Id.* at 618-19, 626 (internal quotation marks and citations omitted).

In light of *G.L.*'s holding, the Hearing Officer erred by limiting Ms. Price's evidence to the

10

two-year period prior to her filing a complaint. Because Ms. Price did not discover the IDEA violations until October 2014, her complaint, filed the same month, was timely, and she should have been permitted to introduce testimony and documents to support her argument that the District violated the IDEA when it denied her request for an evaluation of T.R. in 2011.

Although she incorrectly excluded evidence from T.R.'s second-and third-grade year, this Court cannot conclude T.R. was denied a FAPE at Bywood, even considering such evidence. *See Kuszewski v. Chippewa Valley Sch. Dist.*, 56 F. App'x 655, 660-01 (6th Cir. 2003) (noting where a parent claims she was denied due process because she was unable to present her case in full, it is the parent's burden to demonstrate by a preponderance of the evidence that the IEP in question is inadequate and the procedural violation caused substantive harm to child or his parents).

In her offer of proof, Ms. Price introduced T.R.'s second-and third-grade interim reports. The grade two report, completed by Ms. Lewis, showed overall satisfactory performance, including (1) satisfactory work habits; (2) DIBELS[3] scores falling into the highest category of "established"; (3) reading performance levels ranging between "Basic" and "Proficient";[4] (4) grammar performance levels ranging between "Below Basic" and "Advanced"; and (5) a rating of "Proficient" or "Advanced" in oral reading fluency. PE-18. The grade three report, completed by T.R.'s third-grade teacher, Mr. McKnight, shows even higher scores: (1) satisfactory work habits; (2) 4Sight scores[5] all marked "Proficient"; (3) DIBELS scores all marked "At or Above

---

[3] DIBELS, Dynamic Indicators of Basic Early Literacy Skills, are a set of procedures and measures used to monitor the development of early literacy and reading skills. https://dibels.org/dibels.html (last visited Oct. 5, 2016).

[4] The performance level scoring falls into four categories: (1) Below Basic; (2) Basic; (3) Proficient; and (4) Advanced.

[5] 4Sight PA Core Standards Benchmark Assessments are assessments of students' skills in reading and math, Grades 3-8, and provide a formative evaluation of student progress.

Benchmark"; (4) reading performance levels ranging between "Proficient" and "Advanced"; and (5) grammar performance levels ranging between "Basic" and "Proficient."  PE-19.

Ms. Price also included in her offer of proof undated and incomplete G-MADE[6] scores, *see* PE-1 at 3-4; PE-1A; Hr'g Tr. 545-55, Feb. 2, 2015, as well as documents related to Price's request for an evaluation in 2011, including Ms. Lewis's teacher questionnaire, completed in response to Price's request for an evaluation, SD-1-9; PE-1.  In the questionnaire, Ms. Lewis indicated the degree of T.R.'s behavioral problems varied greatly, noting T.R.'s most serious problems were that he was "restless" and "overly sensitive to criticism."  *Id.* at 1-2.

Contrary to Price's contention that the District withheld information and misled her as to T.R.'s disability, the SST appears to have considered the test scores and teacher comments Price provided in her offer of proof in its decision not to evaluate T.R., and reported the details of that decision to Price.  *See* SD-5, 3/23/11 Summary of SST Referral Form.  The SST took note of T.R.'s DIBELS scores in the above average range, reading and language arts scores in the average range or above with the exception of writing, G-MADE scores that were in the uppermost end of the Low Average range and one point shy of an Average range score, and placement in the most advanced reading program offered for his grade level.  *Id.*  The team also considered Ms. Lewis's reported concern regarding T.R.'s behavioral issues, but took note of Ms. Price's pursuit of an ADHD diagnosis and indicated accommodations would be made upon that diagnosis.  *Id.*

T.R.'s subsequent diagnosis of expressive language disorder in 2014 does not establish the SST improperly evaluated T.R.'s academic capabilities in 2011, especially because the team took

---

http://www.iu13.org/store/4sight-assessments/ (last visited Oct. 5, 2016).

[6] G-MADE, Group Mathematics Assessment and Diagnostic Evaluation, is a diagnostic mathematics test that measures individual student skills in the main areas of math. http://www.pearsonassessments.com/learningassessments/products/100000692/group-mathematics-assessment-and-diagnostic-evaluation-g-made-gmade.html (last visited Oct. 12, 2016).

into account relevant test scores and assessments. In any event, the Court cannot conclude the District violated IDEA by failing to evaluate T.R. based on undated and incomplete G-MADE test scores. Although the record shows the SST considered at least some of those scores, there is no indication they were all available at the time Ms. Price requested the evaluation. Furthermore, as the Hearing Officer pointed out, "the fact that maybe one or two test scores or test results doesn't fit a pattern, does not necessarily mean that the whole pattern has to be thrown out." Hr'g Tran. 545, Feb. 2, 2015.

With regard to Ms. Price's request to call Ms. Lewis as a witness, Ms. Price indicated she sought only for Ms. Lewis to clarify the scores and assessments discussed above. Ms. Price has failed to show such testimony would have shown a violation of the IDEA, and the testimony likely would have been cumulative. Thus, Ms. Price's proposed evidence does not sufficiently undermine the Hearing Officer's decision. *See Kuszewski*, 56 F. App'x at 660-01.

Further, although the Hearing Officer limited Ms. Price's claims to T.R.'s fourth-grade year, she considered the District's initial decision not to evaluate T.R. in her analysis of Ms. Price's "child find" claim,[7] and in doing so, determined the District met its child find obligation by conducting an evaluation of T.R.'s needs within a reasonable time after becoming aware of facts likely to indicate that he could have a disability. ODR Admin. Record Ex. 2, 3/25/15 Special Educ. Hr'g Officer Decision at 15. The Hearing Officer noted, and the evidence shows, the District "reasonably responded to [Ms. Price's] request by discussing her concerns followed by gathering and reviewing information about [T.R.'s] academic progress, behaviors and functioning

---

[7] The IDEA, and Pennsylvania law, require school districts to identify, locate, and evaluate all potentially disabled children. 20 U.S.C. § 1412(a)(3); 34 C.F.R. § 300.111(a),(c)(1); 22 Pa. Code §§ 14.121-14.125. "'Failure to locate and evaluate a potentially disabled child constitutes a denial of FAPE.'" *G.D. v. Wissahickon Sch. Dist.*, 832 F. Supp. 2d 455, 462 (E.D. Pa. 2011) (quoting *N.G. v. District of Columbia*, 556 F. Supp. 2d 11, 16 (D.D.C. 2008)).

in the school setting, in accordance with its general policies." *Id.* at 16. T.R. was generally performing well during second grade, and as HO Carroll noted, the "concerns identified by T.R.'s second-grade teacher were the kinds of behaviors that alerted [Ms. Price] to the possibility that [T.R.] had ADHD, which was diagnosed soon after." *Id.* Thus, the Hearing Officer found it was not unreasonable for the District not to rush to an evaluation of T.R. in his early school years, and to conclude T.R.'s needs could be sufficiently addressed by a 504 plan following his ADHD diagnosis. *Id.* (citing *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 252 (3d Cir. 2012) and *K.A.B. v. Downington Area Sch. Dist.*, No. 11-1158, 2013 WL 3742413, at *14, 15 (E.D. Pa. 2013). The Hearing Officer concluded, "[t]aking into full account the facts as known to the parties during the 2010/2011 school year," Ms. Price failed to prove a child find violation. *Id.* at 17. Price's offer of proof does not alter the "facts as known to the parties" during T.R.'s second-grade year.[8]

**Count II**

Ms. Price next contends the Hearing Officer abused her discretion by failing to disclose that she had also been assigned to a due process proceeding initiated by J.H.'s mother in 2013. Third Am. Compl. at 21. She argues summary judgment is warranted because the Hearing

---

[8] Similarly, Ms. Price's proposed evidence from 2010-2012 does not demonstrate the District violated the IDEA by failing to evaluate T.R. in 2011 because it is not clear Dr. Yellin's expressive language disorder diagnosis is correct. The Hearing Officer reasonably credited Dr. James's testimony that the report misdiagnosed expressive language disorder because of serious flaws in testing and assessment of that testing. ODR Admin. Record Ex. 2, 3/23/15 Special Educ. Hr'g Officer Decision at 11; Hr'g Tr. 309-10, Jan. 7, 2015. Based on Dr. James's testimony, the Hearing Officer afforded the report little weight, noting there was no indication Dr. Yellin gathered background information from any source other than the parent, contacted District staff, conducted classroom observations, or had any specially-trained professional administer and interpret the standardized cognitive, achievement, language, visual/motor, or behavioral tests and assessments administered to the student. ODR Admin. Record Ex. 2, 3/23/15 Special Educ. Hr'g Officer Decision at 11. The fact that the Hearing Officer rejected Dr. Yellin's diagnosis further weakens the crux of Price's argument—that evidence the Hearing Officer excluded from 2010-2012 would have shown the District failed to diagnose T.R. with expressive language disorder.

Officer had a duty to disclose that involvement under the *Pennsylvania Standards of Conduct for Office for Dispute Resolution (ODR) Special Education Hearing Officers* (the Standards). The District argues Ms. Price's claim is without merit.

In 2013, Melanie Price, Price's sister, filed claims on behalf of J.H., but withdrew those claims on the eve of the due process hearing to which the Hearing Officer was assigned.[9] Ms. Price relies solely on the Standards for her claim that the Hearing Officer had a duty to disclose her involvement in J.H.'s proceeding to avoid the appearance of partiality. The Standards state: "Hearing officers shall not conduct or participate in deciding the outcome of any proceeding in which their impartiality might be reasonably questioned." Standards I.B.1. The Standards further require hearing officers to inquire into whether a "reasonable individual" would find a potential or actual conflict of interest exists, and to "promptly disclose all conflicts of interest that are known to [them]."[10] Standards II.B, C.

Ms. Price fails to demonstrate, or even allege, any impropriety or bias as to the Hearing Officer's behavior. Rather, Ms. Price alleges only that the Hearing Officer responded to issues with "significant delay." Third Am. Comp. at 21. As discussed below, Ms. Price has not shown any significant delay occurred. *See infra*, discussion of Count III. Furthermore, Ms. Price draws no connection between the Hearing Officer's scheduled involvement in J.H.'s hearing (which never took place), and any delay in the handling of her due process complaint in this case, and she

---

[9] The District disputes Ms. Price's contention that she learned only recently that the Hearing Officer was also assigned to handle J.H.'s due process hearing, noting Ms. Price was integral to her sister's case against the District and, therefore, was knowledgeable about the proceedings. Ms. Price admits her involvement in her sister's due process proceeding, but contends she was "not intimately aware of the [proceeding's] events." Pl.'s Mot. for Summ. J. 14-15.

[10] The IDEA also provides that parents who file a complaint "shall have the opportunity for an impartial due process hearing." 20 U.S.C. § 1415(f)(1)(A), and the hearing officer must not have "a personal or professional interest that conflicts with [her] objectivity at the hearing," *id.* § 1415(f)(3)(A)(i)(II).

offers no evidence to support her bald assertion that an "adversarial relationship" existed between Melanie Price and the Hearing Officer.  *Id.*

Ms. Price contends, at the very least, the Hearing Officer should have disclosed her involvement in J.H.'s case to "avoid the appearance of partiality."  Pl.'s Mot. for Summ. J. at 15.  But the Standards do not require that the Hearing Officer disclose her superficial involvement in J.H.'s case where no conflict existed.  Ms. Price has failed to demonstrate a reasonable person would have found the Hearing Officer had a duty to disclose any past relationship with Melanie Price and J.H. due to a potential conflict of interest.  This claim therefore lacks merit.

**Count III**

Ms. Price also contends she was deprived of her right to a fair and impartial proceeding because of the Hearing Officer's substantial delay in addressing issues Ms. Price raised.  Third Am. Compl. 21-23.  Ms. Price alleges it took the Hearing Officer (1) five days to respond to her request to amend the original due process complaint and/or set a due process hearing date[11]; (2) seven days to advise if Ms. Price would be permitted to present additional witnesses and to supplement an exhibit; and (3) five days to determine, based on Ms. Price's offer of proof, whether Ms. Price would be permitted to present evidence of IDEA violations prior to October 2012.  On January 31, 2015, she contacted the Hearing Officer to express her concerns regarding those delays, but the Hearing Officer failed to respond.  *Id.* at 22; *see* OCR Admin. Record Ex. 12, HO-2.

Ms. Price argues summary judgment is warranted because none of the issues she raised were complex, and the Hearing Officer's delay placed her at a significant disadvantage.

---

[11] Ms. Price alleges it took the Hearing Officer five days "to get a decision despite the District's acceptance of the amended complaint," but it is not entirely clear to which decision she is referring.

Ultimately, Ms. Price appears to argue the Hearing Officer's alleged bias caused the delay in the due process hearing. The District argues this claim fails because the Hearing Officer did not substantially delay the proceedings; rather, the record shows she made timely and thoughtful rulings. The District further argues Ms. Price failed to show she suffered prejudice from any perceived delay.

Ms. Price fails to provide any support for her claim that the Hearing Officer's response time constituted significant delay. Under Pennsylvania's Rules of Administrative Practice and Procedure governing agencies of the Commonwealth, a hearing officer has the authority to "regulate the course of hearings, including the scheduling thereof." 1 Pa. Code § 35.187(1). The IDEA incorporates certain timelines and deadlines pertaining to due process hearings, including a timeline for the filing of a complaint, 20 U.S.C. § 1415(f)(3)(C), a response to a complaint, *id.* § 1415(c)(2)(B)(i)(I), and a notice of a complaint's insufficiency, *id.* § 1415(c)(2)(C). Yet there are no regulations specifying the time in which a hearing officer must respond to a parent's requests or render decisions concerning evidence during the course of a hearing. In fact, the statute's provision allowing a party to amend its due process complaint states that the hearing officer "may only grant such permission at any time not later than [five] days before a due process hearing occurs," but does not specify the number of days after a motion to amend is made in which the officer must render a decision. *Id.* § 1415(c)(2)(E)(i)(II). Further, the timelines provided suggest five days is a reasonable time for a hearing officer to respond to a request. *See id.* § 1415(c)(2)(D) (requiring a hearing officer to make a whether a notification of a due process complaint meets the statute's requirements "[w]ithin [five] days of receipt of the notification").

Ms. Price also fails to explain how she was disadvantaged by the alleged delays, but instead alleges only generally that she did not receive a fair and impartial due process proceeding.

However, Ms. Price presented no evidence of the Hearing Officer's bias, *see supra*, discussion regarding Count II, and the three instances of slight delay do not substantiate Price's claim of partiality. There is simply no evidence the Hearing Officer engaged in significant or purposeful delay. This claim thus has no merit.

**Count IV**

Finally, Ms. Price contends the Hearing Officer permitted a conflict of interest relationship to exist between District counsel and two former District employees, Dr. James and Ms. Ruth King, T.R.'s special education teacher.[12] Third Am. Compl. 23. Ms. Price argues summary judgment is warranted because District counsel's interactions with Dr. James and Ms. King presented a conflict of interest under Pennsylvania Rule of Professional Conduct 4.3,[13] and the Hearing Officer endorsed that conflict. The District argues its counsel appropriately prepared the witnesses for their testimony at the due process hearing, and did not exercise inappropriate control over the witnesses.

Ms. Price asserts she had reason to believe Dr. James and Ms. King were represented by District counsel, and she suffered prejudice because she did not have the same access to the

---

[12] Both employees resigned during the 2013-2014 school year.

[13] Pennsylvania Rule of Professional Conduct 4.3 provides:
> (a) In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested.
> (b) During the course of a lawyer's representation of a client, a lawyer shall not give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the lawyer knows or reasonably should know the interests of such person are or have a reasonable possibility of being in conflict with the interests of the lawyer's client.
> (c) When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer should make reasonable efforts to correct the misunderstanding.

witnesses. Third Am. Compl. 26. She first understood these witnesses to be represented by District counsel when the District advised her on November 13, 2014 that both individuals were potential witnesses for the due process hearing. In January 2015, District counsel advised Ms. Price and the Hearing Officer of Dr. James and Ms. King's willingness to testify with or without a subpoena, and indicated the date and time they were available to testify. In the case of Ms. King, at Ms. Price's request, a subpoena was issued, and District counsel received and forwarded the subpoena to Ms. King, and later confirmed its receipt. When Ms. Price inquired as to whether District counsel was formally representing Ms. King, the Hearing Officer explained counsel represented only the District and accepted service of the subpoena on behalf of Ms. King as a matter of convenience. Ms. Price also contends she overheard Dr. James thanking District counsel for preparing her to testify. Ms. Price requested to postpone the February 11, 2015, hearing due to what appeared to her to be a conflict of interest, but the Hearing Officer denied the request. At that hearing, Price expressed her discontent with the apparent relationship between Ms. King and District counsel, and decided not to question Ms. King. *See* Hr'g Tr. 826-46, Feb. 11, 2015.

Although Ms. Price cites to Rule 4.3, it is not entirely clear how she believes District counsel violated the Rule. Insofar as Ms. Price argues Dr. James and Ms. King were unrepresented persons to whom District counsel could not give advice without creating a conflict of interest, there is no evidence counsel violated Rule 4.3 by implying to Dr. James and Ms. King he was disinterested or by providing advice to them when he knew their interests were in conflict with those of the District. In the alternative, Ms. Price may be arguing she herself was unrepresented, but there is no evidence District counsel gave Ms. Price advice or communicated with her in a manner that suggested he was disinterested. Ms. Price provides no other authority

for her claim that counsel created a conflict of interest by subpoenaing Ms. King and preparing Dr. James, and the Court finds no reason why counsel could not interact with the witnesses—former District employees—in such a way.

**CONCLUSION**

Because there is no genuine dispute of material fact as to whether the Hearing Officer committed procedural errors or Ms. Price received an impartial and fair due process hearing, the Court will grant the District's Motion for Summary Judgment and will deny Ms. Price's Motion for Summary Judgment.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.